**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL BOUCHARD,** | : | **Civil No. 1:24-CV-1454** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. Introduction

The ability to ambulate without assistance is often a key component to employment. Therefore, when ambulation is impaired, it follows that the ability to work is undermined. Social Security regulations recognize this basic truth and specifically contemplate that the "requirement to use a hand-held assistive device may . . . impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying,

[1]Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). Thus, the issue of whether a claimant requires an assistive device to ambulate is one that can be outcome determinative in disability cases.

When faced with a potentially outcome determinative issue on appeal, it is the duty and responsibility of the district court to review the ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record, see 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This informed assessment by the ALJ, however, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Thus, the Social Security Act and case law construing the Act place a duty of articulation upon ALJ's which is essential to informed evaluation of disability determinations on appeal.

We are reminded of these guiding tenets of Social Security practice as we turn to this case. In the instant case, an ALJ denied the disability application of Michael Bouchard, an individual closely approaching retirement age who had previously worked in the auto service industry. Bouchard's application alleged disability beginning on June 1, 2021, in part due to degenerative disc disease causing chronic neck and lower back pain and weakness in his legs. During the relevant period, the plaintiff's neck and back impairments were so severe that he underwent both cervical and lumbar fusion surgeries. Nonetheless, the ALJ fashioned an RFC for Bouchard that required him to perform light work, occasionally balance, stoop, kneel, crouch or crawl, and frequently operate hazardous machinery and be exposed to unprotected heights. (Tr. 15). In reaching this result the ALJ rejected the opinions of the treating sources who opined on Bouchard's abilities and did not include a provision in the residual functional capacity (RFC) to account for Bouchard's use of an assistive device. In fact, the ALJ did not address whether the cane use was medically necessary under the regulations, despite the plaintiff's testimony at the hearing that he used a cane, his function report stating he was prescribed a cane, and multiple references in the medical records to his use of a cane, at least during part of the relevant period, due to instability, foot drop, and lower extremity weakness.

Given the substantial evidence which reveals that Bouchard, at least for a portion of the relevant period, experienced balance issues and weakness and at least three different providers noted he used a cane for ambulation, more is needed here to justify the ALJ's decision that the plaintiff could perform light work. Indeed, in similar circumstances we have held that when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without addressing their need for an assistive device, a remand is warranted. See Semanski v. Bisignano, No. 1:23-CV-414, 2026 WL 710994 (M.D. Pa. Mar. 13, 2026); Wolabaugh v. Bisignano, No. 4:24-CV-1989, 2026 WL 561225 (M.D. Pa. Feb. 27, 2026); Stahurski v. O'Malley, No. 3:22-CV-1807, 2024 WL 3204243, at *1 (M.D. Pa. June 27, 2024); Jordan v. Kijakazi, No. 1:21-CV-01975, 2023 WL 2616099 (M.D. Pa. Mar. 23, 2023); Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II. Statement of Facts and of the Case

On September 21, 2021, Bouchard filed a claim for disability and disability insurance benefits (DIB) under Title II of the Social Security Act, alleging an onset of disability beginning on December 30, 2020. (Tr. 10). His alleged onset date was

amended at the hearing to June 1, 2021, the date he no longer engaged in substantial gainful activity. (Tr. 39). Bouchard was born on November 22, 1958, and was sixty-two years old on the alleged date of the onset of his disability, which is defined as an individual closely approaching retirement age under the regulations. (Tr. 65). He has a high school education and previously worked as an automotive service manager and auto counter clerk. (Tr. 18-19, 38, 59).

Bouchard alleged he was disabled due to disc compression, pain in his legs, high blood pressure, difficulty walking, standing and sitting for long periods, and difficulty sleeping due to pain. (Tr. 59). The medical records showed he suffered from degenerative disc disease of the cervical and lumbar spine which culminated in two major spinal fusion surgeries.

At the beginning of the disability period, in June 2021, the plaintiff sought treatment for pain and numbness on the left side of his neck that radiated down his left arm and into his left hand and fingers. (Tr. 314). He reported being scared to drive because of numbness in his hand and arm and pain. He also reported low back pain radiating down both legs into his feet. (Id.) In fact, Bouchard stated he sometimes used a cane and experienced increased falls and balance issues, (tr. 315), and told his primary care provider that he "was recently hospitalized multiple times for falls." (Tr. 344). Cervical and lumbar x-rays revealed cervical and lumbar

radiculopathy, degenerative disc disease, spinal stenosis and spondylosis and lumbar spondylolisthesis. (Tr. 315). His gait was antalgic and his provider stated that he was "not using an assist device, *but should* be due to weakness." (Tr. 315) (emphasis added). Epidural steroid injections in the cervical and lumbar spine were recommended. (Tr. 316).

At a follow-up in July, he reported ongoing tingling and numbness in his lower legs, though he reported sixty to seventy percent improvement with the epidural injections for the pain in the left side of his neck. (Id.) His gait was again described as antalgic, and he demonstrated reduced range of motion in his lumbar and cervical spine. (Tr. 322-23). Epidural injections were again administered. (Tr. 323).

Bouchard visited neurology in August 2021 where he reported neck pain and paraspinal lumbosacral back pain and bilateral lower extremity pain ranging from 4/10 to 10/10 made worse by reaching to the right with his left arm and lifting his arms above his head, bending, lifting, twisting, prolonged walking, and lying. (Tr. 374). A nurse note from that time also stated, "he ambulates with a cane d/t feeling off balance." (Tr. 448). An MRI was conducted which revealed fairly advanced multilevel degenerative disc disease with significant disc space collapse and broad-based bulging discs and he was diagnosed with cervical radiculitis. (Tr. 382-83). An

Anterior Cervical Discectomy and Fusion (ACDF) surgery was recommended and he was referred to physical therapy. (Tr. 383).

In January 2022 he underwent this cervical spinal fusion and at a two-week postoperative appointment he reported a ninety percent improvement in his symptomatology and that he was "ecstatic" with the clinical results he received to that point. (Tr. 423). However, around the same time he told his primary care physician that he had difficulty walking and used a cane for long distances. (Tr. 398).

At follow-up appointments in March and April 2022, he again reported dramatic improvement in his neck pain and right arm pain but still reported chronic lumbosacral back pain and bilateral lower extremity pain and weakness. (Tr. 471, 481). An examination revealed left-sided footdrop attributed to spondylolisthesis of the lumbosacral region. (Tr. 485). He also reported ongoing bilateral lower extremity weakness and symptoms suggestive of neurogenic claudication and noted that physical therapy had not been effective at treating his lower back symptoms. (Tr. 481). Physical therapy records from around the time show that in April 2022 Bouchard reported having trouble with his lumbar spine with pain radiating down his legs and reported occasional use of a cane on uneven surfaces. (Tr. 494-524).

In May 2022 he reported to neurology that his constant lower back pain, lower extremity pain, and left foot drop take away from his quality of life and ability to

participate in activities of daily living and that his symptoms were unable to be treated by conservative measures such as medications, physical therapy, and injections. (Tr. 530). An MRI revealed "fairly profound foraminal stenosis of the L5-S1 level as result of lumbosacral spondylolisthesis, degenerative disc disease, and spondylosis." (Tr. 534). A lumbar spinal fusion was suggested and he underwent the procedure in August of 2022. (Tr. 542-61). In September 2022 it was again noted that Bouchard was "using a cane to walk." (Tr. 583).

At a six-week follow-up in October 2022, he reported dramatic improvement in his preoperative symptoms and that he was extremely pleased with his progress. (Tr. 606). He stated that he was able to participate in household activities without difficulty and was slowly increasing his activity level. (Id.) A six-month follow-up in February 2023 he reported significant improvement in his symptoms but it was unclear whether his ambulation had improved to the point that he no longer used a cane. Instead, notes state that "he feels that his cervical spine surgery was of better value in his lumbar spine surgery but that being said, he is pleased with his results and hopeful for continued improvement over the course of time." (Tr. 656). Thus, while the medical records indicate that the plaintiff experienced improvement in his symptoms following his two spinal fusions, the record is also replete with references

during the relevant period to the plaintiff's significant postural and ambulation difficulties and his use of a cane.

Several experts also opined on Bouchard's ability to perform work-related activity. Two treating sources concluded Bouchard would experience significant limitations due to his impairments, while two non-treating, non-examining State agency consultants concluded he was capable of light work.

On June 22, 2023, Physical Therapist Daniel Mundorff opined that, due to the plaintiff's multiple spine surgeries he would be unable to lift more than ten pounds, could sit for up to six hours, but must get up four to five times, and could only stand or walk for three hours, or a few hundred feet, in an eight-hour workday. (Tr. 689). He further opined that Bouchard would have to rotate between sitting and standing every forty-five minutes, could never reach, and would require unscheduled breaks every thirty to forty-five minutes. (Tr. 689-90). PT Mundorff stated that Bouchard's cervical and lumbar range of motion was limited to fifty percent. (Id.) Another treating source, Dr. Ahmad Farmista, also concluded the plaintiff's impairments would cause him to be frequently absent, four or more days per month, and that he

could only stand or walk for one hour in an eight-hour workday and could never lift more than ten pounds or reach.[2] (Tr. 653-54).

Conversely, the non-examining sources concluded the plaintiff could perform light work. On November 14, 2022, Dr. Roman Oleh Bilynsky opined that Bouchard could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds and could stand, walk, and sit for about six hours in an eight-hour workday. (Tr. 62). Dr. Bilynsky's summary also notes several references by the plaintiff's providers to his use of an assistive device. (Tr. 62-65). Nonetheless, Dr. Bilynsky opined that Bouchard could only occasionally perform any postural activities but could never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to hazards such as machinery and unprotected heights. (Tr. 63). On reconsideration, Dr. Jennie-Corinne Rebecca Baublitz-Benenborg's opinion largely mirrored that of Dr. Bilynsky in that the plaintiff could perform light work but should avoid exposure to unprotected heights and machinery and could only occasionally engage in postural activities. (Tr. 70-78).

---

[2] This source's opinion appears to reference an acute injury the plaintiff suffered to his ribs in 2022, thus it is unclear whether this treating source considered the plaintiff's combination of impairments or only this injury. For this reason, the ALJ entirely discredited this opinion. While we agree it appears this opinion references the plaintiff's rib injury, it adds to the weight of evidence, rejected by the ALJ, that the plaintiff's impairments caused him significant mobility limitations.

In addition to the medical records and opinion evidence, the plaintiff also provided his subjective testimony regarding the limiting effects of his impairments which reinforced his use of a cane and postural and ambulation difficulties. In his March 2022 function report, Bouchard stated that he had been prescribed a cane eighteen months prior and used it when walking any distance. (Tr. 238). He reported pain and mobility issues and stated he could not walk more than twenty-five feet. (Tr. 221-39). At the hearing on August 2, 2023, the plaintiff testified that the lumbar and cervical surgeries substantially helped to lower his pain, but that his mobility was still "horrible" and that he used a cane, could only walk five minutes with the assistance of a cane, and needed to always be supported while standing. (Tr. 45-47).

A vocational expert also testified at the hearing that if the plaintiff were limited to sedentary work, could only stand and walk four out of eight hours during the workday, or needed to use a handheld assistive device, he would be unable to perform his past work. (Tr. 54-57).

Following this hearing on Bouchard's disability application, the ALJ issued a decision denying his claim on October 10, 2023. (Tr. 7-24). In that decision, the ALJ first concluded that Bouchard had not engaged in substantial gainful activity since his amended alleged onset date of disability, June 1, 2021, and that he met the insured status requirements of the Social Security Act through June 30, 2025. (Tr.

12). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Bouchard had the following severe impairments: degenerative disc disease of the cervical spine, s/p cervical fusion surgery, spondylolisthesis of the lumbosacral region, degenerative disc disease and osteoarthritis of the lumbar spine, s/p lumbar fusion surgery. (Tr. 13). At Step 3, the ALJ determined that Bouchard's impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Id.)

Between Steps 3 and 4, the ALJ concluded that Bouchard retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch or crawl. He can tolerate frequent exposure to unprotected heights, and he can frequently operate hazardous machinery. The claimant can tolerate frequent exposure to humidity, wetness, atmospheric conditions, extreme cold and vibrations.

(Tr. 22).

This RFC – which called for Bouchard to perform a limited range of light work, occasionally balance, stoop, kneel, crouch, and crawl and frequently be exposed to unprotected heights and operate hazardous machinery – made no

provision whatsoever for Bouchard's use of a cane despite his testimony that he used a cane and the repeated reinforcement of his statements in the medical record.

The ALJ's decision not to provide for Bouchard's cane use in the RFC was almost entirely unexplained. Indeed, the ALJ acknowledged the plaintiff's testimony that he could only walk about five minutes with a cane and could not stand on his own for any amount of time, but never engaged in a discussion of whether, or when, the use of the cane was medically necessary. Instead, the ALJ focused only on records showing an improvement in the plaintiff's preoperative symptoms following his spinal fusion surgeries in 2022 but never addressed records from the onset date and beyond the plaintiff's surgeries that repeatedly reference his balance and mobility issues and need for a cane. Thus, it is unclear from the face of the decision whether, and at what point, the ALJ concluded Bouchard did not need a cane.

Moreover, in fashioning the RFC requiring the plaintiff to perform light work, which involves standing and walking six hours total in an eight-hour workday, the ALJ rejected the opinion of the plaintiff's treating physical therapist which concluded the plaintiff could sit for up to six hours, but must get up four to five times, and could only stand or walk for three hours, or a few hundred feet, in an eight-hour workday. In finding the opinion of PT Mundorff unpersuasive, the ALJ again focused on reports of the plaintiff's improvement following his lumbar

surgery, highlighting that PT Mundorff last treated the plaintiff prior to this surgery. But the ALJ ignored the fact that this opinion was issued on June 22, 2023, following the plaintiff's lumbar surgery and, in fact, considered a much longer period after the plaintiff's surgeries than the two non-treating sources the ALJ credited.

Instead, finding the treating source opinion unpersuasive since this source had not treated the plaintiff since his surgery, the ALJ credited the opinions of two sources who had never examined or treated the plaintiff stating that these opinions were consistent with each other and the treatment records showing a good response to both recent surgeries. (Tr. 17-18).

Thus, the ALJ concluded the plaintiff was capable of light work based upon treatment notes stating his general condition had improved since his spine surgeries, which were performed during the relevant period, but did not directly address any improvement in the plaintiff's mobility or ability to stand and walk for a significant period of time as required by light work. The ALJ then found that Bouchard could perform his past work as an auto counter clerk, which is generally performed at the light exertional level but which the plaintiff testified he performed at the medium level. (Tr. 18-19). The ALJ did not identify any other jobs the plaintiff could perform, nor could he, since the vocational expert testified that he had no transferable skills. (Tr. 55). Thus, based upon the plaintiff's ability to perform light work, the

ALJ concluded Bouchard had not been under a disability from the alleged onset date through the date of the decision. (Tr. 19).

This appeal followed. (Doc. 1). On appeal, Bouchard argues that the ALJ failed to account for the "total limiting effects" of the plaintiff's impairments in fashioning a light work RFC, challenging the ALJ's rejection of the plaintiff's testimony and treating source opinions. We agree that the ALJ's RFC assessment was flawed in that it failed to account for or explain the rejection of Bouchard's documented cane use and did not adequately consider and analyze the treating source opinion evidence. Accordingly, we will remand this case for further consideration.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,

> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 587 U.S. at 102–03.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777

F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the

Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20

> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

It is against this backdrop that we evaluate the decision of the ALJ in this case.

**D. <u>This Case Will Be Remanded for Further Review.</u>**

On appeal, the plaintiff lodges a multifaceted attack on the ALJ's RFC assessment, specifically arguing that the RFC fails to account for the total limiting effects of his impairments as required by the regulations. After a review of the record, we agree that the RFC assessment in this case was deficient in that it concluded he was capable of significant standing and walking requirements without adequately addressing and accounting for the plaintiff's documented mobility issues.

First, this RFC assessment failed to account for or address the plaintiff's documented use of a cane. On this score, case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal.

Nonetheless, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the assistive device must be medically necessary. On this score:

> Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need

> not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor.

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of an assistive device on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for his need for a cane. See Dieter, 2020 WL 2839087, at *9. In such instances a remand may be necessary.

Here, the RFC fashioned for Bouchard clearly includes significant mobility requirements since, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983). Moreover, the RFC would require the plaintiff to occasionally, up to one third of the day, balance, stoop, kneel, crouch, or crawl and frequently, or up to two-thirds of the day, be exposed to unprotected heights and operate hazardous machinery. These significant mobility requirements ran contrary to the plaintiff's testimony that was squarely before the ALJ that he could only walk for five minutes with the use of a cane, could never stand without assistance, and his function report stating he was prescribed a cane.

Further, these statements were supported by medical documentation showing Bouchard's use of a cane and the circumstances for which it was needed. For example, during the relevant disability period, which began on June 1, 2021: Bouchard's pain management provider noted that his gait was antalgic and noted that he was "not using and assistive device but should be due to weakness," (tr. 315); in August 2021, it was noted that "he ambulates with a cane d/t feeling off balance," (tr. 448); in January 2022 his primary care physician noted that he had difficulty walking and used a cane for long distances, (tr. 398), physical therapy notes from

April and May 2022 note that he occasionally used a single point cane, (tr. 494-524), and a September 2022 note following his lumbar fusion stated he was using a cane to walk." (Tr. 583). This substantial evidence of the plaintiff's cane use during the relevant period went entirely unaddressed by the ALJ. To the extent the ALJ found the plaintiff's statements about his mobility issues unsupported by the medical record, the ALJ never engaged in a discussion of whether the use of the cane was medically necessary.

This failure to even address the plaintiff's cane use while concluding the plaintiff was capable of significant standing and walking requirements was compounded by the ALJ's rejection of the treating source opinion evidence. In fact, the RFC findings were contrary to the opinion of the plaintiff's treating physical therapist, who had examined and treated the plaintiff during the relevant period, including following his cervical surgery and immediately prior to his lumbar surgery. While, as we have noted, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales, 225 F.3d at 317. The rejection of this opinion as untimely was simply "the wrong reason" since this opinion was issued after all of the non-treating source opinions the ALJ found

persuasive and purportedly considered the plaintiff's limitations at that time.[3] Further, the ALJ's rejection of this opinion as inconsistent with treatment records showing improvement after his surgeries is vague and failed to directly address any objective evidence refuting the plaintiff's claims that, although his pain improved with his surgeries his mobility was still, "horrible." Indeed, while our independent review of the record reveals he reported significant improvement in his pre-operative symptoms, we found no objective evidence, and the ALJ cited to no specific findings regarding his ability to stand, walk, or perform the required postural activities following these surgeries. In fact, treatment notes seem to reinforce what the plaintiff testified at the hearing, that his cervical fusion offered more holistic relief from those symptoms than his lumbar fusion. For example, while he reported significant improvement in his symptoms at his six-month follow-up in February 2023 whether his ambulation had improved was unclear and notes state that "he feels that his cervical spine surgery was of better value in his lumbar spine surgery but that being

[3] It is also worth noting that the RFC also adopted much less restrictive environmental limitations than the non-treating sources he credited in that the State agency consultants concluded Bouchard should avoid concentrated exposure to hazards and heights due to his spinal issues, the ALJ concluded he could frequently be exposed to unprotected heights and could frequently operate hazardous machinery. (Tr. 15).

said, he is pleased with his results and hopeful for continued improvement over the course of time." (Tr. 656). In our view, the ALJ was required to specifically address objective evidence of the plaintiff's mobility following his surgery in concluding he was capable of performing light work.

Finally, these errors on the part of the ALJ were potentially outcome determinative. A finding that an individual's cane use is medically necessary could change the ultimate disability outcome since it could affect his ability to perform the standing and walking requirements of light work, the occasional postural maneuvers, as well as the lift and/or carry requirements identified in the RFC. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4); SSR 96-9p. See also Ubiles v. Berryhill, No. 15-CV-895-RJA-MJR, 2017 WL 4712208, at *6 (W.D.N.Y. Sept. 29, 2017), report and recommendation adopted, No. 1:15-CV-00895 (MAT), 2017 WL 4680492 (W.D.N.Y. Oct. 18, 2017) (citing Wright v. Colvin, No. 6:13-cv-6585(MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) ("If Plaintiff needs to use a cane for support and balance, that would mean at least one hand is are [sic] not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal."). This was confirmed by the vocational expert at the hearing who testified that if the plaintiff were limited to sedentary work or if he required a handheld assistive device, he could not perform his past work. (Tr. 55-57).

Simply put, more was needed here on the part of the ALJ to account for the significant standing and walking requirements imposed upon the plaintiff who had documented mobility limitations throughout the disability period. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV. Conclusion

Accordingly, for the foregoing reasons, this case will be REMANDED for further consideration.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 22, 2026